UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMY VON DER AHE and THOMAS VON DER AHE, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-2526-B |
| 1-800-PACK-RAT, LLC and ZIPPY SHELL INC., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION & ORDER

Before the Court is Defendants 1-800-Pack-Rat, LLC, and Zippy Shell Inc. (collectively "Zippy Shell")'s Motion to Dismiss Plaintiff's Original Petition (Doc. 4). For the following reasons, the motion is **GRANTED.**

I.

BACKGROUND[1]

This case is about a moving contract gone wrong. Plaintiff Thomas Von Der Ahe ("Tommy") was moving from his college apartment in Tuscaloosa, Alabama to Dallas, Texas. Doc. 1-2, Pls.' Orig. Pet., ¶ 6. In May 2020, Tommy's mother, Plaintiff Emmy Von Der Ahe ("Mrs. Von Der Ahe"), signed a contract with Defendants Zippy Shell to rent a "pod" beginning May 8, 2020. *Id.* ¶ 7. The contract included an extra "Contents Protection Plan." *Id.* Per the agreement, Zippy Shell would

---

[1] The Court derives this factual statement from the Plaintiff's Original Petition (Doc. 1-2).

"deliver a pod to Tommy's Tuscaloosa residence, at which point it would be loaded and then transported to Texas." *Id.* ¶ 8. "The items to be loaded [into the pod] included items belonging to Tommy and to his girlfriend, Charli." *Id.* Tommy would put his own lock on the pod, and Zippy Shell would pick up the pod from Tommy's residence in Tuscaloosa and move it to Dallas. *Id.* "The pod was . . . to be delivered [first] to Charli's Dallas apartment, where she would remove her belongings." *Id.* Then, Zippy Shell would "pick the pod up again and store it in Dallas County until Tommy was ready for the pod to be delivered to his Dallas apartment." *Id.*

According to plan, Zippy Shell delivered a pod to Tommy's Tuscaloosa residence and, after loading it, Tommy locked the pod with his personal lock. *Id.* ¶ 9. Zippy Shell picked up the locked pod to begin the delivery to Texas. *Id.* Eleven days later, the pod was delivered to Charli's new Dallas apartment for partial unloading. *Id.* ¶ 10. After two days, a Zippy Shell driver called Mrs. Von Der Ahe and Tommy (collectively "the Von Der Ahes") to inform them "that they could keep the pod in front of [Charli's] residence for another day or so," then he would pick up the pod. *Id.* ¶ 11.

After a total of four days, a Zippy Shell driver picked up the pod on the morning of May 23, 2020. *Id.* ¶ 12. "When the pod was picked up . . . , [Tommy's] lock was in place, and the pod contained thousands of dollars of Tommy's possessions, including electronics, watches, furniture, clothing, kitchen items, and keepsakes" and a few items of Charli's. *Id.*

Per the contract, the pod was to be stored locally until it was needed at Tommy's Dallas apartment or until June 7. *Id.* at ¶¶ 8, 13. In early June 2020, the Von Der Ahes contacted Zippy Shell, requesting that the pod be delivered to Tommy's new Dallas apartment. *Id.* ¶ 14. Zippy Shell did not deliver the pod, but instead, over the following months, various agents of Zippy Shell told the Von Der Ahes stories ranging "from the pod being 'empty' [when picked up at] Charli's

apartment, to the pod being lost, to the pod . . . being delivered directly to the next customer rather than being stored." *Id.* ¶ 15. In sum, Zippy Shell could not locate the pod or Tommy's belongings. *Id.*

After months of trying to get information and responses from Zippy Shell, the Von Der Ahes finally received an email from Mitch Smith's 1-800-Pack-Rat email address, which included "a blurry photo of a pod" purportedly found at Zippy Shell's Carrollton, Texas location "and a request to confirm whether the items in the pictured pod . . . belonged to [them]." *Id.* ¶ 23. When Tommy visited the Carollton, Texas facility and was shown the pod, "[t]he personal lock on the exterior door had been removed," the belongings inside were in total disarray, and it appeared that all items of monetary value were missing. *Id.* ¶ 24. Zippy Shell finally delivered the pod to Tommy on March 13, 2021. *Id.* ¶ 27. However, "all of the electronics and many other valuable items . . . were missing . . . [,] [and] a safe inside the pod had been broken into and all of the watches and jewelry were missing" from inside. *Id.*

The Von Der Ahes filed their Original Petition in state court on September 8, 2021, bringing claims for breach of contract, common-law fraud, negligent misrepresentation, fraud by non-disclosure, conversion, Texas Deceptive Trade Practices Act ("DTPA") violations, breach of the duty of good faith, and breach of the prompt payment statute. *Id.* ¶¶ 29–80. Zippy Shell removed the action to this Court, Doc. 1, Not. Removal, and filed the instant motion to dismiss the Original Petition for failure to state a claim. Doc. 4, Mot. Dismiss. The Motion has been fully briefed and is ripe for review. The Court considers it below.

## II.

## LEGAL STANDARDS

A.      *Rule 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Well-pleaded facts of a complaint are to be accepted as true. *Id.* But, legal conclusions are not "entitled to the assumption of truth," nor will a complaint suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Further, a court is not to "strain to find inferences favorable to the plaintiff[,]" or accept "conclusory

allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success but only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

B.      *Carmack Amendment*

The Carmack Amendment states in relevant part: "a carrier . . . that delivers . . . property and is providing transportation or service subject to the [Interstate Commerce] Commission . . . [is] liable to the person entitled to recover under the receipt of bill of lading. The liability imposed . . . is for the actual loss or injury to the property." 49 U.S.C. § 14706. The Carmack Amendment permits carriers to establish reasonable limits on liability for damage caused to goods transported in interstate commerce. 49 U.S.C. § 14706(c)(1)(a).

To establish a prima facie case of negligence for loss or damage to goods as a result of interstate transportation by a common carrier, thus implicating the Carmack Amendment, the shipper must demonstrate: (1) the goods were delivered to the shipper in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir. 1996); *Interface Printers, LLC v. BGF Global, LLC*, 2018 U.S. Dist. LEXIS 115344 (citation omitted). Once a prima facie case has been established by the shipper, "there is a rebuttable presumption  of negligence on the part of the carrier." *Global Tech. Enters. V. 4 Way Transp. LLC*, 2017 U.S. Dist. LEXIS 215762 (citing *Man Roland, Inc. V. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 479 (5th Cir. 2006) (citation omitted).

**III.**

**ANALYSIS**

The Von Der Ahes bring claims under Texas law for: (1) breach of contract; (2) common-law fraud; (3) negligent misrepresentation; (4) fraud by non-disclosure; (5) conversion; (6) violations of the Texas DTPA; (7) breach of the duty of good faith; (8) and breach of the Texas Insurance Code's prompt payment provision. *See* Doc. 1-2, Pls.' Orig. Pet. ¶¶ 29–80. Below, the Court first finds that the shipment of goods at issue is an interstate shipment to which the Carmack Amendment applies and then considers the Amendment's impact on each claim.

A.    *The Carmack Amendment Applies*

Zippy Shell claims that each of the Von Der Ahes' state law claims is preempted by the Carmack Amendment. Doc. 4, Mot. Dismiss, 2–3. The Von Der Ahes claim that their causes of action are not preempted since the Carmack Amendment does not apply to intrastate shipments. Doc. 7, Resp., 6–8.

<u>1.      Whether the Shipment of Goods is Interstate Transportation</u>

The Carmack Amendment provides that a carrier shall be liable for actual loss or damage to goods arising from the interstate transport of the goods by a common carrier. 49 U.S.C. § 14706. The Supreme Court has recognized that although a segment of transportation may be intrastate, a transaction is still "incident to an interstate journey within the ambit of the Interstate Commerce Act," where the overall transportation is to begin in one state and end in another. *N.Y., New Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128,130 (1953).

Zippy Shell argues that the entire transportation arises from interstate commerce because the overall nature was interstate since the shipment began in Alabama and ended in Dallas. Doc. 8,

Reply, 2–3. Zippy Shell argues that the delivering the pod to Dallas and then later picking it up and

storing it in Dallas County are all "connected parts of a continuing interstate move." *Id.* at 4.

The Von Der Ahes allege that their claims do not arise from interstate transport because the

claims concern conduct arising from shipping goods between locations in Dallas, Texas. Doc. 7,

Resp., 7–8. The Von Der Ahes contend that, because the damage occurred in a shipment between

two Texas locations, the shipment resulting in damage was intrastate. *Id.*

The Court finds that the shipment was interstate transport since the transportation was

intended to be between Alabama and Texas, and the later shipments within Texas were all segments

in that continued interstate shipment. Mrs. Von Der Ahe and Zippy Shell contracted to ship goods

from Tuscaloosa, Alabama to Dallas, Texas. Doc. 1-2, Pls.' Orig. Pet., ¶¶ 6–8. So, the Von Der Ahes'

"fixed and persisting intent … at the time of shipment" was an interstate shipment of the goods from

Alabama to multiple locations in Texas. *Texas v. United States*, 866 F.2d 1546, 1556 (5th Cir. 1989)

(explaining that the 'fixed and persisting intent' of delivery and transportation when shipping goods

determines whether the shipment was interstate). The later segments of transportation occurring

only between Texas locations cannot be separated from the interstate nature of the entire

transportation. *See Nothnagle*, 346 U.S. at 130. Because the shipment is interstate in nature, the

Court next considers whether there was actual loss or damage to property.

2.      Whether There was Actual Loss or Damage

The parties do not dispute that the Van Der Ahes suffered actual loss or damage to items.

*See* Doc. 1-2, Pls.' Orig. Pet., ¶¶ 24, 27; Doc. 4, Mot. Dismiss, 2–16 (presenting no argument that

the Von Der Ahes did not suffer damage). The Court finds that this requirement is satisfied. Thus

the Court finds that the shipment was (1) interstate and (2) the plaintiffs suffered actual loss or

damage to property, so the Carmack Amendment applies. The Court next considers whether each

of the Von Der Ahes' claims are preempted under the Carmack Amendment.

B.      *The State Law Claims are Preempted or Inadequately Pled*

Congress passed the Carmack Amendment to the Interstate Commerce Act intending that

it "provide the exclusive cause of action for loss or damages to goods arising from the interstate

transportation of those goods by a common carrier." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778

(5th Cir. 2003) (emphasis omitted). The Carmack Amendment "supersedes all state laws as to the

rights and liabilities and exemptions created by" covered transactions. *Id.* at 776 (quoting *Adams*

*Express Co. v. Croninger*, 226 U.S. 491, 505 (1913)). Furthermore, "in actions seeking damages for

loss of property shipped in interstate commerce by a common carrier . . . the Carmack Amendment

is the shipper's sole remedy." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 379–82 (5th

Cir. 1998); *Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R. Co.*, 721 F.2d 483, 484–85 (5th Cir.

1983). "The Carmack Amendment preempts any common law claim that" would increase carrier

liability, "unless the shipper alleges injuries separate and apart from those resulting directly from the

loss of shipped property." *Morris*, 144 F.3d 377, 382. The Fifth Circuit has recognized that the broad

reach of the Carmack Amendment:

> preempt[s] all state law claims including claims for 1) the tort of outrage,
> 2) intentional and negligent infliction of emotional distress, 3) breach of contract, 4)
> breach of implied warranty, 5) breach of express warranty, 6) violation of Texas
> Deceptive Trade Practices Act, 7) slander, 8) misrepresentation, 9) fraud,
> 10) negligence and gross negligence, and 11) violation of the common carrier's
> statutory duties as common carrier under state law.

*Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306 (5th Cir. 1993). Claims for attorneys' fees have also

been deemed to be preempted by the Carmack Amendment. *See Accura*, 98 F.3d at 876. Applying

this law, the Court finds that all of the Von Der Ahes' claims are preempted by the Carmack

Amendment because each claim arises from or is related to the interstate shipment of goods. *See*

*Moffit*, 818 F. Supp. 2d at 180.

1.      Breach of Contract

As explained above, claims for breach of contract are preempted by the Carmack

Amendment when the contract is for the interstate shipment of goods. *See Moffit*, 6 F.3d at 306.

Here, the Von Der Ahes claim that the breach of contract occurred when Zippy Shell failed

to comply with all obligations under the contract. Doc. 1-2, Pls.' Orig. Pet., 6. Zippy Shell argues that

the Von Der Ahes' claims for breach of contract is impermissible, due to the broad preemptive scope

of the Carmack Amendment. Doc. 4, Mot. Dismiss, 7–8. Because the contract is for the interstate

shipping and short-term storing of Tommy's belongings, it is related to the interstate shipment of

goods by a carrier, Doc. 1-2, Pls.' Orig. Pet., ¶ 8, and the alleged breach was incident to the interstate

transportation of goods. *See Moffit*, 6 F.3d at 306. So, the Von Der Ahes' breach-of-contract claim

is preempted by the Carmack Amendment.

Therefore, the Court **DISMISSES WITH PREJUDICE** the Von Der Ahes' breach-of-

contract claim.

2.      Common-Law Fraud and Negligent Misrepresentation

Because the Von Der Ahes's allegations for fraud and negligent misrepresentation are based

on the same facts, the Court addresses these allegations together. The Von Der Ahes allege that their

common-law fraud and negligent misrepresentation claims were based on material misrepresentations regarding the shipment and storage of the pod, which resulted in injury. Doc. 1-2, Pls.' Orig. Pet., 6–7. Zippy Shell contends that the claims for fraud and negligent misrepresentation center on the transportation and storage of the goods, specifically regarding the agreement that the pod would be safely stored at Zippy Shell's facility. Doc. 4, Mot. Dismiss, 9.

The Fifth Circuit has found that all common law claims arising from the interstate shipment of goods are preempted by the Carmack Amendment, including fraud and misrepresentation. *See Air Prods. & Chems.,* 721 F.2d at 85. Taking the Von Der Ahes' allegations as true, the Court finds that the claims for fraud and negligent misrepresentation are preempted by the Carmack Amendment because the claims are related to the storage of the pod, which is part of the interstate transportation of goods. *See Moffit*, 6 F.3d at 306. Therefore, the Court **DISMISSES WITH PREJUDICE** the Von Der Ahes' common-law fraud and negligent misrepresentation claims.

3.      Fraud by Non-Disclosure

The Von Der Ahes claim that the fraud by non-disclosure occurred when Zippy Shell knowingly and/or intentionally concealed or failed to disclose facts related to the condition and location of the pod. Doc. 1-2, Pls.' Orig. Pet., 8. Zippy Shell argues that because the alleged non-disclosure was related to the loss or damage to goods transported interstate, the claim is preempted by the Carmack Amendment. Doc. 4, Mot. Dismiss, 9.

This Court has held that state and common law claims for damage and loss of property shipped in interstate commerce "are as a matter of law preempted by the Carmack Amendment." *Hanlon v. United Parcel Serv.*, 132 F. Supp. 2d 503, 506 (N.D. Tex. 2001). While the claim for fraud by non-disclosure arose during the pod's storage, the storage was still part of the same interstate

shipment of the goods, therefore any loss or damage can only be remedied through the Carmack Amendment. *See Nothnagle*, 346 U.S. at 130; *Hanlon*, 132 F.Supp.2d at 506.

In conclusion, the Von Der Ahes' claim for fraud by non-disclosure is preempted by the Carmack Amendment. Therefore, the Court **DISMISSES WITH PREJUDICE** the Von Der Ahes' claim for fraud by non-disclosure.

> 4.   Conversion

The Von Der Ahes claim that Zippy Shell wrongfully exercised dominion or control over their property, "including electronics, household goods, furniture, clothing, jewelry, and other items of value." Doc. 1-2, Pls.' Orig. Pet., 8. The Fifth Circuit has deemed claims for conversion to be preempted by the Carmack Amendment, except in the very narrow circumstance where a carrier has intentionally converted the shipper's property for its own use. *Tran Enters., LLC v. DHL Express (USA) Inc.*, 627 F.3d 1004, 1009 (5th Cir. 2010). Zippy Shell argues that the claim for conversion fails to allege that Zippy Shell intentionally converted the belongings for their own gain or use, so the Fifth Circuit exception to Carmack preemption of conversion does not apply. Doc. 4, Mot. Dismiss, 10–11.

As Zippy Shell claims, the Fifth Circuit has found that the exception to preemption of conversion of the Carmack Amendment is very narrow and covers only intentional conversion for personal gain. *Tran Enters.*, 627 F.3d at 1009. The Von Der Ahes do not allege that Zippy Shell acted intentionally and for its own benefit in converting the property. Doc. 1-2, Pls.' Orig. Pet., 8.

So, the Carmack Amendment preempts the claim for conversion. 627 F.3d at 1009. Therefore, the Court **DISMISSES WITH PREJUDICE** the Von Der Ahes' claim for conversion.

5.      Texas DTPA

The Von Der Ahes allege that Zippy Shell violated the Texas DTPA by "misrepresenting that the Contract conferred or involved rights and remedies that it did not, and failing to disclose information about services that was known at the time of the transaction." Doc. 1-2, Pls.' Orig. Pet., 8–9. The Von Der Ahes claim that those misrepresentations and failure to disclose are related to claims of a "safe and secure" storage facility and that "content protection" was in place. *Id.* Zippy Shell contends that these claims for damages all arise out of the contract for the interstate shipment of goods and are therefore preempted by the Carmack Amendment.  Doc. 4, Mot. Dismiss, 11–12.

The Fifth Circuit in *Moffit* found that, among other claims, a claim seeking damages under the Texas DTPA was preempted by the Carmack Amendment. *See* 6 F.3d at 307. But, some courts have found very limited exceptions to the preemption of claims under the DTPA. *See Franyutti v. Hidden Valley Moring and Storage, Inc.*, 325 F. Supp. 2d 775, 777 (W.D. Tex. 2004) (finding that false or misleading representations regarding rate for guaranteed delivery damage resulting from those misrepresentations not preempted, due to a statutory provision requiring different rates for guaranteed versus non-guaranteed deliveries); *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 938 (Tex. 1980) (holding that false, misleading, or deceptive practices occurring before there was a contract for interstate shipment of household goods is not preempted). However, these exceptions have been construed very narrowly and, generally, "state claims involv[ing] damages to goods arising from the interstate transportation of those goods by a common carrier . . . are preempted by the Carmack Amendment." *Hayes v. Stevens Van Lines, Inc.*, 2015 WL 11023794, \*2 (N.D. Tex. 2015).

Here, the Court finds that the Von Der Ahes' state law DTPA claim is preempted by the

-12-

Carmack Amendment because—as presently pleaded—it arises from the interstate shipment of household goods. *Hanlon v. United Parcel Service*, 132 F.Supp.2d 503, 506 (N.D. Tex. 2001). The pleadings establish that the Von Der Ahes are seeking damages under the DTPA related to the interstate transporting and storing of their goods. *See Nothnagle*, 346 U.S. at 130.

Furthermore, the present allegations that Zippy Shell was aware that the storage facility would not be safe and secure and that the content protection plan was not in place cannot be accepted as true, because they are mere assertions, which are not backed by any other supporting facts. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); Doc. 1-2, Pls.' Orig. Pet., 8–9. Without pleading sufficient facts to suggest that Zippy Shell made misrepresentations prior to their shipment contract with the Von Der Ahes, the Von Der Ahes' DTPA claims do not meet any of the above exceptions to avoid preemption by the Carmack Amendment. *See Franyutti* 325 F. Supp. 2d at 777; *Brown*, 601 S.W.2d at 938.

In conclusion, because the damages claimed arose during the agreed upon shipment of household goods in interstate commerce, the Carmack Amendment preempts the claim for damages under the DTPA, as presently pleaded. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the Von Der Ahes' claim for violations of the DTPA.

6.      Breach of the Duty of Good Faith and Breach of the Prompt Payment Statute

The Von Der Ahes' claims for breach of the duty of good faith and the Prompt Payment Statute are based on their characterization of Zippy Shell as insurance providers, due to the offering of a "Contents Protection Plan." Doc. 1-2, Pls.' Orig. Pet., 9–11. Zippy Shell argues that the Von Der Ahes have failed to allege facts to support that Zippy Shell was an insurer. Doc. 4, Mot. Dismiss,

13–14. Furthermore, Zippy Shell argues that even if the facts are sufficient to suggest that they were acting as insurers when selling the Contents Protection Plan, the Carmack Amendment would nevertheless preempt these claims because they arise from property damage during the interstate shipment of goods. *Id.* at 14–15.

Other Courts have found that the Carmack Amendment preempts claims for breach of the duty of good faith, when the claims are related to contractual dealings for the interstate shipment of goods. *Shull v. United Parcel Service*, 4 S.W.3d 46, 50 (Tex. App.– San Antonio 1999, no pet.). The *Moffit* court found that the purpose for the Carmack Amendment "is to provide a comprehensive scheme whereby an interstate carrier's rates would be dependent upon the liability assumed," thus any recovery for a shipper for damage to goods transported in interstate commerce is solely based on the Carmack Amendment. 818 F. Supp. 2d at 181.

The Court finds that the Von Der Ahes' allegations are not sufficient to support claims for breach of the duty of good faith and breach of the Prompt Payment Statute under the Texas Insurance Code. The allegation that Zippy Shell is an insurance provider and is subject to the Texas Insurance Code cannot be accepted as true because these are "naked assertions," which are not backed by supporting factual allegations. *See Twombly*, 550 U.S. at 556. Because the Von Der Ahes have failed to allege facts to prove that Zippy Shell was acting as an insurance provider, they have failed to state a claim for which relief can be granted under the Texas Insurance Code. *See Brown*, 601 S.W.2d at 938.

However, the Court finds that the Carmack Amendment does not preempt claims under the Texas Insurance Code, where it has been sufficiently proven that the carrier was acting as an insurance provider, because "no Act of Congress shall be construed to invalidate, impair, or

supersede any law enacted by any State for the purposed of regulating the business of insurance"

unless the Act is specifically related to the business of insurance. 15 U.S.C. § 1012.

In conclusion, the allegations are not sufficient to prove that the Texas Insurance Code

applies to Zippy Shell. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the Von Der

Ahes' claims for breach of the duty of good faith and of the Prompt Payment Statute.

### 7.      Attorneys' Fees

Along with their other claims, the Von Der Ahes have requested attorneys' fees as damages.

Doc. 1-2, Pls.' Orig. Pet., 6–11. Zippy Shell argues that the claim is preempted because attorneys' fees

are not recoverable under the Carmack Amendment, as they are related to the shipment of

household goods through interstate commerce. Doc. 4, Mot. Dismiss, 15–16.

The Carmack Amendment preempts "state law claims . . . including [the] claim for

attorney[s'] fees." *Moffit*, 818 F. Supp. 2d at 181. The Fifth Circuit has long recognized that

"attorney[s'] fees authorized by state law are not available in Carmack Amendment actions," where

the action is for claims arising from the interstate transportation of goods. *Accura Sys., Inc. v. Watkins*

*Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996) (citing *Strickland Transp. Co. v. Am. Distrib. Co.*,

198 F.2d 546, 547 (5th Cir. 1952)).

The Court agrees that the Von Der Ahes' claims for attorneys' fees are preempted by the

Carmack Amendment to the extent that they arise from the interstate shipment and damage to their

goods. Prohibiting the award of attorneys' fees serves to maintain the purpose of the Carmack

Amendment by not increasing carrier liability for damage to goods shipped by a common carrier

through interstate commerce. *See Morris*, 144 F.3d at 382. Allowing the recovery of attorneys' fees

would contradict the well-established principle that the Carmack Amendment is the exclusive remedy for damage to goods shipped in interstate commerce. *See Id.*

In conclusion, the Court finds that attorneys' fees cannot be recovered by the Von Der Ahes where they are related to damage caused by the interstate shipment of goods and thus preempted by the Carmack Amendment. Therefore, the Court **DISMISSES WITH PREJUDICE** the Von Der Ahes' claim for attorneys' fees arising from the interstate shipment of their goods and **DISMISSES WITHOUT PREJUDICE** their other claims for attorneys' fees.

### IV.

### CONCLUSION

In sum, for the reasons stated above, the Court **GRANTS** the Motion (Doc. 4) and **DISMISSES WITH PREJUDICE** the Von Der Ahes' claims for breach of contract, common law fraud, negligent misrepresentation, fraud by non-disclosure, conversion, and attorneys' fees for claims related to damage caused by the interstate shipment of goods.

The Court **DISMISSES WITHOUT PREJUDICE** the Von Der Ahes' claims for breach of the DTPA, duty of good faith, and breach of the prompt payment statute, along with the claims for attorneys' fees not related to damage caused by the interstate shipment of goods.

The Von Der Ahes may file an amended complaint pleading additional facts to support a claim under the Carmack Amendment or address the other deficiencies identified in this Order within **THIRTY (30)** days of this Order, should they choose to do so.

SO ORDERED.

SIGNED: April 5, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE